IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM B. HARKUM, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-22-479 |
| JACOBS TECHNOLOGY, INC., | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Jacobs Technology, Inc.'s ("Jacobs") Motion to Dismiss Amended Complaint (ECF No. 25). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons set forth below, the Court will grant the Motion.

## I. BACKGROUND[1]

### A. Factual Background

#### 1. Employment and Accommodation Requests

Plaintiff William B. Harkum has worked as a technical photographer for Jacobs at Aberdeen Proving Ground ("APG"), a secure facility, since August 19, 2002. (Am. Compl. ¶ 7, ECF No. 21). When the COVID pandemic hit, Harkum worried that his diabetes, obesity, and cirrhosis placed him at great risk during the early, pre-vaccine days of the

---

[1] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 21) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

pandemic. So, in late 2020, his physician wrote a letter requesting that Harkum be permitted to work from home indefinitely. (Id. ¶¶ 10, 12). Jacobs declined, and Harkum claims that he was denied reasonable accommodations and subjected to harassment and a hostile work environment. (Id. ¶ 15).

On March 29, 2020, like many employers, Jacobs initially allowed all its employees to work from home. (Id. ¶ 16). Over the coming months, Jacobs began to bring employees back into the office on a staggered basis based on their seniority. (Id. ¶ 17). Jacobs had Harkum report back to work on April 20, 2020, to work on a video project. (Id.). Jacobs did not have many employees on site, so Harkum was able to safely distance himself. (Id.).

Throughout 2020, Jacobs brought more employees back in-person. (Id. ¶ 18). Harkum alleges that he was exposed to COVID and had to quarantine under the Centers for Disease Control and Prevention guidelines. (Id. ¶ 18). He does not allege that he ever contracted COVID. (See generally id.).

On December 18, 2020, his physician, Dr. Steve Pondek, wrote a letter to Jacobs' Human Resources Manager, Christopher Catterton, explaining that Harkum was at high risk of complications should he contract COVID. (Id. ¶ 21). Pondek recommended that he be permitted to work remotely. (Id.). Harkum alleges that Jacobs "did nothing to accommodate this request" and continued to assign him to perform in-person photography work. (Id. ¶ 26).

On December 21, 2020, Harkum reported to a worksite but remained outside to avoid being exposed to COVID. (Id. ¶ 27). Harkum informed a technologist at the site that he had high exposure risks and had a letter from his doctor regarding accommodations.

(Id.). Throughout the course of the day, Harkum spoke with Jacobs Contract Support Manager Steve Tapp, United States Government Lead Brad Lewis, and Jacobs Human Resources Specialist Laurie Bodway regarding his accommodations request. (Id. ¶¶ 27–30). Lewis indicated that there was no telework option available for the project that day. (Id. ¶ 29). Harkum alleges that "[r]ather than finding an actual solution," Human Resources placed Harkum on FMLA leave starting on December 22, 2020 and began to process a short-term disability claim for him. (Id. ¶ 30).

On December 31, 2020, Harkum reached out to Bodway to see whether he could telework "as other similarly situated non-disabled, non-veteran employees . . . were permitted to do." (Id. ¶ 31). Jacobs informed Harkum that it would revisit his request. (Id.). On January 4, 2021, Harkum completed his short-term disability paperwork. (Id. ¶ 32). He claims that Jacobs "did nothing for weeks to provide a reasonable accommodation," so on January 11, 2021, Harkum followed up with Bodway. (Id. ¶ 33). On January 12, 2021, Harkum, Tapp, and Catterton had a teleconference to discuss Harkum's accommodations request. (Id. ¶ 34). Tapp asked "what tasks [Harkum] could do that were essentially the same tasks he would perform if he were able to report in-person to work." (Id. ¶ 35). Harkum indicated that he could telework on his projects "within the scope of his position." (Id. ¶ 36). Specifically, he could conduct "data analysis, range diagrams, updat[e] and moderniz[e] Job Safety Analysis [] working documents, high speed camera processing, normal still photography,[2] and video editing." (Id.).

_____

[2] The Court notes that Harkum does not explain how he could take photos remotely. (See Am. Compl. ¶ 36).

Catterton responded that he would continue to review the situation, and Tapp stated that the Government Lead still objected to Harkum's request to telework on that particular contract. (Id. ¶ 37). Harkum claims that Tapp "did not in any way address that [Harkum's] work could be completed remotely." (Id.). Harkum claims that Jacobs discriminated against him on the basis of his disability by "refus[ing] any reasonable accommodations" and later denying his request for short-term disability. (Id. ¶¶ 38, 39).

On January 19, 2021 and February 16, 2021, Harkum underwent surgery relating to his cirrhosis. (Id. ¶ 40). Dr. James Hamilton, a hepatologist, agreed with Pondek's accommodation request, but it is unclear whether Hamilton provided any written recommendations. (Id.).

On February 18, 2021, Harkum, Catterton, and Tapp held another teleconference regarding his accommodation request, and Catterton stated that Harkum's accommodation request was denied. (Id. ¶ 41). Harkum claims that Jacobs and Lewis "stifled the interactive process and refused to provide reasonable accommodation or even any other suitable alternative to his request." (Id. ¶ 42). Rather, Jacobs directed Harkum to report in-person to work. (Id.). Harkum states that "[s]everal other non-disabled photographers[] were allowed to telework," and further that Jacobs had a backlog of data analysis work that he could have performed remotely. (Id. ¶¶ 43, 51). Harkum indicates that he gave Jacobs "a non-exhaustive 39 bullet-point list of critical duties within his position he could safely perform remotely." (Id. ¶ 44). Harkum does not, however, provide that list in his Amended Complaint. (See generally id.). He further acknowledges that "[t]he only arguably in person duty" that he needed to perform as a technological photographer is actually "snapping the

photograph." (Id. ¶ 49). He reaffirms that Jacobs still refused to let him work remotely, move him to another project, give him a new position, or allow another photographer to take the pictures in person. (Id. ¶¶ 48–49).

### 2.    Internal Grievance Process

On February 25, 2021, Harkum filed a grievance with Jacobs through his union, under its Collective Bargaining Agreement ("CBA"). (Id. ¶ 52; Collective Bargaining Agreement ["CBA"] at 9, ECF No. 25-2).[3] Harkum claims that his grievance was denied at each stage of the complaint process, so he took FMLA leave and worked in-person at times. (Am. Compl. ¶ 53, 55).

Jacobs attaches copies of Harkum's grievance documents to its Motion. (See generally ECF No. 25-2). In a decision dated March 15, 2021, labeled as the "Step 2" response to Harkum's grievance, Jacobs indicated that it reviewed Harkum's list of tasks that he could perform, presumably the list of 39 tasks that he references but does not provide in his Amended Complaint. (Mar. 15, 2021 Grievance Decision at 47, ECF No. 25-2).[4] Jacobs stated that "[i]n looking at the tasks submitted by Mr. Harkum and looking at the job description of a Photographer IV, it was determined that the work suggested by Mr. Harkum," fully remote work, "was not a reasonable accommodation due to the fact

---

[3] Rather than filing the exhibits to their Motion as separate attachments, Jacobs combined its exhibits into one attachment. Thus, the electronic document accessible at ECF No. 25-2 contains several exhibits to the Motion to Dismiss. The Collective Bargaining Agreement may be found at pp. 9–32 of ECF No. 25-2. References to exhibit page ranges refer to the pagination of the combined PDF document as it exists on the Court's Case Management/Electronic Case Files ("CM/ECF") system.

[4] The March 15, 2021 Grievance Decision may be found at pp. 47–48 of ECF No. 25-2.

that it was not in line with the essential functions of the position of a Photographer IV."

(Id.). Jacobs stated that the "list was reviewed in detail on the call and it was determined

that the majority of the tasks were not relevant to the essential functions of the

Photographer IV." (Id.). Jacobs stated that it "put together another attempt to a reasonable

accommodation[] that would enable Mr. Harkum to come on site with the intentions of

reducing his exposure to COVID-19," specifically:

> Safety Precautions:
> - Mr. Harkum will be assigned a GOV vehicle to operate during work hours. The vehicle can be cleaned by Mr. Harkum and no one else will be granted access to the vehicle.
> - We have in place the COVID 19 SOP provided.
> - All PPE is on site for use to include rubber gloves, hand sanitizer, masks and cleaning supplies.
> - Mr. Harkum will be issued camera equipment for him to use and maintain. This equipment can be sanitized and no other photographer would have access to the equipment.
> - We can make accommodations (cleared through the customer) to allow Mr. Harkum to obtain an office space in the photo tool crib. This will allow him to be in an area that has minimum foot traffic and would allow the most social distancing. This space can be cleaned and sanitized by Mr. Harkum and kept so by Mr. Harkum.

(Mar. 15, 2021 Grievance Decision at 47–48).

Jacobs also supplied its Step 3 grievance decision dated April 15, 2021. (Apr. 15,

2021 Grievance Decision at 50, ECF No. 25-2).[5] In it, Jacobs denied the grievance again

because Harkum was "unwilling to accept any accommodation beyond that of an indefinite

---

[5] The April 15, 2021 Grievance Decision may be found at pp. 50–51 of ECF No. 25-2.

telework scenario whereby an essential function of the position cannot be met." (Id.). Jacobs wrote that it had already offered accommodations that would mitigate the COVID exposure risk, presumably those outlined in the Step 2 grievance decision. (Id.). Additionally, it noted that it proposed a new accommodation where Harkum could come onto the worksite in a "more isolated manner than previously proposed." (Id.). Specifically, it indicated that Harkum could work a later shift from 2:30 p.m. until midnight to allow him to work around fewer people. (Id. at 51).

### 3. MCCR and EEOC Complaints

On March 23, 2021, Harkum filed a charge of disability discrimination with the Maryland Commission of Civil Rights and the Equal Employment Opportunity Commission. (Am. Compl. ¶ 54, ECF 21; Charge of Discrimination at 34, ECF No. 25-2).[6] In his Charge of Discrimination, Harkum claimed that he was discriminated against on the basis of disability and checked the box for "continuing action." (Charge of Discrimination at 34). He complained that Jacobs failed to accommodate him based on his disability in violation of the Americans with Disabilities Act of 1990 because it denied his request to work from home. (Id.).

In a written decision, MCCR found no probable cause existed to believe that Jacobs discriminated against Harkum. (MCCR Written Finding at 43, ECF No. 25-2).[7] Specifically, the MCCR found Jacobs had agreed to increase safety precautions at Harkum's worksite, including by cleaning, using PPE, sanitizing Harkum's workstation,

---

[6] The Charge of Discrimination may be found at pp. 34–36 of ECF No. 25-2.
[7] The MCCR Written Finding may be found at pp. 38–43 of ECF No. 25-2.

issuing Harkum his own equipment that no other photographer could access, and offering him an alternative work schedule. (Id. at 41). Accordingly, the MCCR found that Jacobs had offered Harkum an effective accommodation that would allow Harkum to perform the essential elements of the job, even though Harkum's preferred accommodation of telework was denied. (Id. at 43). Further, the MCCR determined that indefinite telework would constitute an undue hardship. (Id.).

**B.   Procedural History**

On January 12, 2022, Harkum filed a Complaint in the Circuit Court for Harford County. (ECF Nos. 1-2, 4). Jacobs removed the case to this Court on February 28, 2022 on the bases of federal question jurisdiction and diversity jurisdiction. (ECF No. 1). On March 15, 2022, Jacobs filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 10). On May 16, 2022, Harkum filed an Amended Complaint, mooting the original Motion. (ECF No. 21). In his Amended Complaint, Harkum alleges disability discrimination in violation of the Maryland Annotated Code, § 20-606 et seq. of the State Government Article (Count I), disability discrimination under the Americans with Disabilities Act ("ADA") (Count II), violation of the Rehabilitation Act of 1973 ("Rehab Act") (Count III), and hostile work environment in violation of the ADA and Title 20 of the Maryland State Government Article (Count IV). (Am. Comp. ¶¶ 56–113, ECF No. 21).

Jacobs filed a Motion to Dismiss the Amended Complaint on May 31, 2022. (ECF No. 25). Harkum filed an Opposition on June 20, 2022, (ECF No. 28), and Jacobs filed a Reply on July 12, 2022, (ECF No. 31).

8

## II.    DISCUSSION

A.    **Standards of Review**

1.    **Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) requires a plaintiff to establish the Court's subject-matter jurisdiction by showing the existence of either a federal question under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. A plaintiff may establish federal question jurisdiction by asserting a claim that arises from a federal statute or from the U.S. Constitution. Fed.R.Civ.P. 12(b)(1). To show that the claim arises on one of these bases, the federal question must appear "on the face of the plaintiff's properly pleaded complaint." AES Sparrows Point LNG, LLC v. Smith, 470 F.Supp.2d 586, 592 (D.Md. 2007) (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)). However, when a party challenges subject-matter jurisdiction, the Court may consider "evidence outside the pleadings" to resolve the challenge. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citation omitted).

A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)). When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d

1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject-matter jurisdiction.

With a factual challenge, the plaintiff bears the burden of proving the facts supporting subject-matter jurisdiction by a preponderance of the evidence. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiff has met this burden, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co., 945 F.2d at 768. Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. The movant "should prevail only if the material jurisdictional facts are not in dispute and the [movant] is entitled to prevail as a matter of law." Id. Unlike under the summary judgment standard, however, the Court is permitted to decide disputed issues of fact, Kerns, 585 F.3d at 192, and weigh the evidence, Adams, 697 F.2d at 1219.

The Court may determine on its own initiative that it lacks subject-matter jurisdiction, regardless of whether a party to the case has raised this claim. Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006); see also Fed.R.Civ.P. 12(h)(3). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Id. (quoting Kontrick v. Ryan, 540 U.S. 443, 455 (2004)). The Court "ha[s] an independent obligation to determine whether subject-

matter jurisdiction exists, even in the absence of a challenge from any party." Id. at 514. When the Court establishes that it does not have subject-matter jurisdiction, it "must dismiss the complaint in its entirety." Id.

### 2.    Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266,

268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### 3.    Extrinsic Evidence

Ordinarily, a court may not consider extrinsic evidence when resolving a Rule 12(b)(6) motion. See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC, 794 F.Supp.2d 602, 611 (D.Md. 2011). But this general rule is subject to several exceptions. First, a court may consider documents attached to the complaint, see Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, see Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Second, a court may consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). Third, a Court may consider matters of public record. Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In the event that any of these properly considered extra-pleading materials conflict with the "bare allegations of the complaint," the extra-pleading materials "prevail." Fare Deals, 180 F.Supp.2d at 683; accord RaceRedi Motorsports, LLC v. Dart Mach., Ltd., 640 F.Supp.2d 660, 664 (D.Md. 2009).

Here, although there are no documents attached to the Amended Complaint, there are several exhibits attached to Jacobs' Motion, Harkum's Opposition, and Jacobs' Reply. The Court will address each in turn.

Jacobs attaches the following exhibits to its Motion: (1) Harkum's initial grievance form, which indicates that his union representative was named AJ Begunich and that the matter would immediately advance to Step 2 in the grievance process;[8] (2) a U.S. Department of Labor complaint form that appears to have been filled out by Harkum;[9] the CBA; the Charge of Discrimination; the MCCR Written Finding; [10] the March 15, 2021 Grievance Decision; the April 15, 2021 Grievance Decision; Presidential Proclamations dated October 16, 1917 and December 14, 1917, purportedly showing that the land later used for APG was acquired by the United States and from Maryland;[11] a Presidential Proclamation dated January 15, 1919, purportedly showing additional land later used for

---

[8] The Initial Grievance Form may be found at p. 2 of ECF No. 25-2.

[9] The U.S. Department of Labor form may be found at pp. 3–7 of ECF No. 25-2.

[10] The Court notes that although these findings have no binding or precedential effect over its own determinations, it is within the Court's discretion to consider them. See Conkwright v. Westinghouse Elec. Corp., 739 F.Supp. 1006, 1014 n.7 (D.Md. May 30, 1990) ("Under Fourth Circuit law, the admission of findings of fact by the [MCCR] are discretionary with the trial court."); accord Dee v. Md. Nat. Capital Park & Planning Com'n, No. CBD-09-491, 2010 WL 3245332, at *5 n.7 (D.Md. Aug. 16, 2010).

Harkum argues that the report is of "no relevance," emphasizes its lack of binding effect, and states that "[m]ost courts hold [such reports] [as] either totally inadmissible or subject to the Rule 403 balancing test leaning toward exclusion." (Opp'n at 7 n.1). What Harkum does not do, however, is forthrightly state that review of MCCR findings is within this Court's sound discretion and that courts have typically excluded them where they were found unreliable or overly prejudicial. (See id.); see, e.g., EEOC v. Freeman, 778 F.3d 463 (4th Cir. 2015) (holding that trial court did not abuse its discretion in excluding EEOC expert report with a "mind-boggling" number of errors).

[11] The October 16 and December 14, 1917 Presidential Proclamations may be found at pp. 53–54 of ECF No. 25-2.

APG was taken by the United States;[12] and finally, the Acts of the Maryland General Assembly from 1906, purportedly showing that Maryland ceded exclusive jurisdiction over those lands to the federal government.[13] All of the documents attached to Jacobs' Motion are either integral to the allegations in the Amended Complaint or matters of public record. Further, Harkum does not question or object to their authenticity in his Opposition, and they appear to the Court to be authentic. Accordingly, the Court will consider them as it finds appropriate. See Blankenship, 471 F.3d at 526 n.1; Philips, 572 F.3d at 180.

Next, Harkum attaches an affidavit to his Opposition that states he did not settle his request for accommodations with Jacobs. (Aff. William B. Harkum ["Harkum Aff."] ¶¶ 6–7, ECF No. 28-1). In response, Jacobs attaches an affidavit by Catterton to its Reply, which states, in pertinent part, that Harkum's claim indeed did settle his grievance with the company. (Decl. Christopher J. Catterton ["Catterton Aff."] ¶ 6, ECF No. 31-1). Jacobs also attaches an email from AJ Begunich to Donald Hall dated May 19, 2021, which states "The union hereby withdraws grievance 21-1 (William Harkum) without prejudice to our original position." (Begunich Email at 1, ECF No. 31-2). But the Affidavits are not integral to or relied upon in the Amended Complaint. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). Thus, they do not meet the exceptions to the general exclusion of extrinsic evidence at the 12(b)(6) stage. See id.

---

[12] The January 15, 1919 Presidential Proclamation may be found at pp. 56–58 of ECF No. 25-2.

[13] The 1906 Maryland Laws may be found at pp. 60–61 of ECF No. 25-2.

The Court further declines to consider the Harkum Affidavit or the Catterton Affidavit because doing so would trigger conversion to summary judgment prematurely. Indeed, consideration of extrinsic evidence that does not meet the above exceptions necessarily converts a Rule 12(b)(6) motion into one for summary judgment. See Aegis Bus. Credit, LLC v. Brigade Holdings, Inc., No. AAQ-21-00668, 2022 WL 3716543, at *5 (D.Md. Aug. 29, 2022). "The court should not make such a conversion where the parties are not given notice and are not afforded the opportunity to conduct reasonable discovery." Id. Here, although the motion to dismiss was not styled in the alternative as one for summary judgment, Jacobs attached several exhibits to its Motion. Thus, Harkum was on notice that the Court might consider extrinsic evidence and therefore the Motion might be treated as one for summary judgment. Nonetheless, the parties have not yet had the opportunity to engage in discovery. Accordingly, the Court cannot consider the Affidavits at this stage because it would inappropriately force conversion.

**B.   Analysis**

**1.   Jurisdictional Analysis**

**a.   CBA**

First, Jacobs argues that this Court lacks jurisdiction over Harkum's claims because they are subject to mandatory and exclusive resolution procedures under the CBA. (Def.'s Mem. Supp. Mot. Dismiss ["Mot."] at 6–10, ECF No. 25-1). Harkum responds that he did not waive his right to a judicial forum in the CBA. (Pl.'s Resp. Def.'s Mot Dismiss Am. Compl. ["Opp'n"] at 9–18, ECF No. 28). At bottom, the Court agrees with Harkum and will deny Jacobs' Motion to the extent it seeks dismissal under Rule 12(b)(1).

"The question whether the parties to a CBA agreed to arbitrate discrimination claims arising under the ADA—or any other federal statutory antidiscrimination law—is one of contract interpretation." Brown v. ABF Freight Sys., Inc., 183 F.3d 319, 321 (4th Cir. 1999). The Court "do[es] not apply the usual interpretive presumption in favor of arbitration." Id. Instead, it "will not find an intent to arbitrate statutory claims absent a 'clear and unmistakable' waiver of an employee's 'statutory right to a judicial forum for claims of employment discrimination.'" Id. (quoting Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 80–81 (1998)). "[A] union-negotiated waiver of employees' right to a federal judicial forum for statutory employment-discrimination claims must be clear and unmistakable." Id. There are two approaches for a CBA to reach the required clarity. Singletary v. Energysys, Inc., 57 F.App'x 161, 163 (4th Cir. 2003) (quoting Carson v. Giant Food, Inc., 175 F.3d 325, 331 (4th Cir. 1999)). The first "involves drafting an explicit arbitration clause," which includes "a clear and unmistakable provision under which the employees agree to submit to arbitration all federal causes of action arising out of their employment." Id. (quoting Carson, 175 F.3d at 331). The second method applies "when the arbitration clause is not so clear." Id. (quoting Carson, 175 F.3d at 331). In that case, general arbitration clauses must be supported by additional language requiring "explicit incorporation of statutory anti-discrimination requirements" that "make[] it unmistakably clear that the discrimination statutes at issue are part of the agreement." Id. (quoting Carson, 175 F.3d at 332). In its Reply, Jacobs argues that the CBA meets the second standard. (Def.'s Reply Pl.'s Opp'n ["Reply"] at 4–5, ECF No. 31). Thus, the Court need not address the first.

Here, the CBA merely references the ADA:

> ATSS Companies and the Union agree that there will be no discrimination against any employee for any reasons for activity either for or against the Union, to the extent protected by applicable law. ATSS Companies and Union agree to comply with all applicable provisions of the Americans With Disabilities Act.

(Ex. 2, CBA, art. III, ECF No. 25-2). Although the CBA indicates that ATSS Companies and the Union will comply with the ADA, it does not explicitly incorporate all of the ADA's requirements and therefore cannot act as a waiver of Harkum's rights to a federal forum. See Singletary, 57 F.App'x at 163.

Brown v. ABF Freight Systems, 183 F.3d 319 (4th Cir. 1999), is particularly helpful in recognizing the difference between mere reference and true incorporation of statutory requirements. There, the Fourth Circuit reviewed a CBA provision that provided:

> The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation, terms or conditions of employment because of such individual's race, color, religion, sex, age, or national origin nor will they limit, segregate or classify employees in any way to deprive any individual employee of employment opportunities because of race, color, religion, sex, age, or national origin or engage in any other discriminatory acts prohibited by law. **This Article also covers employees with a qualified disability under the Americans with Disabilities Act.**

Brown, 183 F.3d at 320 (emphasis added). The Fourth Circuit found that the clause did not make it "unmistakably clear" that it incorporated federal statutory employment discrimination law. Id. at 322. Specifically, the court found that although the language showed an intent not to discriminate, the CBA did not explicitly incorporate those statutes into the agreement. Id. The court explained:

17

> There is a significant difference, and we believe a legally dispositive one, between an agreement not to commit discriminatory acts that are prohibited by law and an agreement to incorporate, in toto, the antidiscrimination statutes that prohibit those acts. We believe that where a party seeks to base its claim of waiver of the right to a federal forum on a claim of "explicit incorporation," Universal Maritime, 119 S.Ct. at 396; Carson, 1999 WL 254438, *8, of the relevant federal antidiscrimination statute into the terms of the CBA, a simple agreement not to engage in acts violative of that statute (which, it bears noting, would be significantly more explicit than the vague reference to acts prohibited by "law" that we have before us) will not suffice.

Id. Like in Brown, the CBA here only expresses Jacobs and the Union's agreement not to engage in acts that violate the ADA—it does not make unmistakably clear that the CBA incorporates the ADA in its entirety. Thus, the CBA's arbitration provision is insufficient to foreclose Harkum's claims and the Court will deny Jacobs' Motion on those grounds.

### 2. Failure to State a Claim

#### a. MFEPA

Next, Jacobs argues that Harkum's Maryland Fair Employment Practices Act ("MFEPA") claim (Count I) must be dismissed under 12(b)(6) under the federal enclave doctrine because APG is on federal land and therefore state law claims are precluded. (Mot. at 11–12). Harkum responds that not all of APG is a federal enclave subject to the doctrine and, alternatively, that the conduct he complains of did not occur at APG. (Opp'n at 22). The Court agrees with Jacobs and will dismiss Count I.

Article I of the Constitution states that Congress can:

> [E]xercise Legislation in all Cases whatsoever over such District[s] . . . as may, by Cession of particular States . . . become the Seat of the government of the United

> States, and to exercise like authority over all Places purchased
> by the Consent of the Legislature of the State in which the
> Same shall be, for the Erection of Forts, Magazines, Arsenals,
> Dock–Yards, and other needful Buildings.

U.S. Const. Art. I, § 8, cl. 17. This gave rise to the federal enclave doctrine, which

"establishes that the federal government obtains the right to choose whether state or federal

law governs a territory from the time it exerts exclusive jurisdiction over that territory."

Colon v. United States, 320 F.Supp.3d 733, 745 (D.Md. 2018). To determine whether a

state law claim is barred by the doctrine, courts use two steps:

> First, the Court must determine whether the conduct at issue
> occurred on a federal enclave. "The United States acquires
> exclusive jurisdiction over a federal enclave if it acquires the
> land by consent of the state legislature." Second, where it is
> established that the conduct occurred on a federal enclave, the
> Court must determine whether the federal government has
> decided to make the particular state law at issue applicable on
> that federal enclave.

Id. at 745–46 (citation omitted). The rule to determine whether a state law applies on a

federal enclave is as follows:

> [A] state law in effect at the time of cessation continues in
> effect as long as it does not conflict with federal purposes, but
> a subsequent state law has no effect unless (1) at the time of
> cessation the state specifically retained jurisdiction over the
> subject matter at issue or (2) Congress specifically authorized
> the enforcement of the state law on the federal enclave.

Id. Here, Jacobs argues that APG is a federal enclave and that the conduct Harkum

complains of occurred at APG. (Mot. at 12). Further, Jacobs contends that the MFEPA was

not in effect at the time Maryland ceded APG to the federal government, and thus Harkum's

MFEPA claim cannot stand. (Id. at 12–13).

Jacobs is correct on both points. First, this Court has held that APG is a federal enclave. United States v. Taylor, 441 F.Supp.2d 747, 750 (D.Md. 2006); APG Housing, LLC v. Moore, No. ELH-15-3720, 2016 WL 1048004, at *1 (D.Md. Mar. 11, 2016) ("Aberdeen Proving Ground is a federal enclave under exclusive federal jurisdiction.").[14] Harkum does not dispute this caselaw, but instead suggests that the discriminatory conduct occurred off federal lands because he wanted permission to work from his home off of APG property. (Opp'n at 22). Harkum's argument strains credulity. Harkum certainly does not allege that Jacobs employees made their allegedly discriminatory decisions to deny his accommodations requests from Harkum's own home. The mere fact that Harkum hoped to work from home does not change the location of Jacobs' allegedly discriminatory conduct. The first requirement of a federal enclave has been met.

Second, the federal government has not made the MFEPA applicable on federal lands either under the timeline of the law's passage or a separate federal act. The United States took the land used to build APG from Maryland in 1917. Holmes, 414 F.Supp. 839. The MFEPA was not effective until many years later on July 1, 1965. Makovi v. Sherwin-Williams Co., 561 A.2d 179, 181 (Md. 1989). Thus, under Colon, Maryland has not retained jurisdiction over claims such as Harkum's. 320 F.Supp.3d at 747 ("[A] state statute promulgated after the cessation of a federal enclave cannot possibly be the vehicle by which a state retains jurisdiction over a particular subject matter on that federal enclave."). Furthermore, there is no other indication that the federal government decided to make the

---

[14] A more thorough analysis of APG's history of ownership is available in United States v. Holmes, 414 F.Supp. 831, 843 (D.Md. 1976).

MFEPA effective on federal lands. Accordingly, Harkum's MFEPA claim is precluded under the federal enclave doctrine. The Court will dismiss Count I.

**b.    Rehabilitation Act and ADA Claims**

Next, Jacobs argues that Counts II and III should be dismissed for failure to state a claim under the ADA (Count II) and § 504 of the Rehabilitation Act (Count III) for discrimination and failure to accommodate. (Mot. at 16–18). The Court agrees that Harkum has failed to plausibly state a claim and will dismiss Counts II and III.

To establish a prima facie case for failure to accommodate under the ADA or the Rehabilitation Act, the plaintiff must show: "(1) the employee was an individual with a disability within the meaning of the ADA; (2) the employer had notice of the disability; (3) with reasonable accommodation, the employee could perform the essential functions of the position; and (4) the employer refused to make such accommodations." Equal Emp. Opportunity Comm'n v. Manufacturers & Traders Tr. Co., 429 F.Supp.3d 89, 103 (D.Md. 2019); see Reyazuddin v. Montgomery Cnty., 789 F.3d 407, 413 (4th Cir. 2015) (stating that employment discrimination claims under the Rehabilitation Act are evaluated using the same standards as the ADA and that the Rehabilitation Act adopts the ADA's definition of disability).

Jacobs does not dispute that Harkum has a disability or that it was on notice of his disability. Rather, Jacobs argues that Harkum cannot establish his prima facie case because he does not plausibly allege that he could perform the essential functions of his job with reasonable accommodations or that Jacobs failed to make any reasonable accommodations. (Mot. at 18–19). The Court agrees.

Harkum's allegations regarding the third element, that he could perform the essential functions of his position with reasonable accommodation, are conclusory and unsupported by specific facts. In his Amended Complaint, Harkum repeatedly states that he "was able to perform all of the essential functions of his position with reasonable accommodations" and "without reasonable accommodations." (Am. Compl. ¶¶ 24–25, 63–64, 74–75, 93–94, 105). Further, although Harkum repeatedly references a "non-exhaustive 39 bullet-point list" of his "critical duties" that he states he could safely perform remotely, he does not present this list to the Court. (See id. ¶¶ 44, 49). Moreover, Harkum's claims that he could perform all of the photography functions remotely is facially implausible. Indeed, he acknowledges but cannot escape that photographers need to be present in-person to "snap[] the photograph." (See id. ¶ 49). Harkum's allegations regarding the third element are thus factually unsupported and insufficient to meet the plausibility standard under Iqbal and Twombly. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

Further, Harkum's allegations regarding the fourth element, that Jacobs refused to make any reasonable accommodations, are in conflict with the extra-pleading materials and are thus implausible. Harkum repeatedly alleges that Jacobs denied him "any reasonable accommodation." (Am. Compl. ¶¶ 15, 38, 65, 76, 105). However, Harkum's allegations are in conflict with the grievance documents that specifically outline the accommodations Jacobs had offered Harkum, such as:

> Safety Precautions:
> - Mr. Harkum will be assigned a GOV vehicle to operate during work hours. The vehicle can be cleaned by Mr. Harkum and no one else will be granted access to the vehicle.

22

- We have in place the COVID 19 SOP provided.
- All PPE is on site for use to include rubber gloves, hand sanitizer, masks and cleaning supplies.
- Mr. Harkum will be issued camera equipment for him to use and maintain. This equipment can be sanitized and no other photographer would have access to the equipment.
- We can make accommodations (cleared through the customer) to allow Mr. Harkum to obtain an office space in the photo tool crib. This will allow him to be in an area that has minimum foot traffic and would allow the most social distancing. This space can be cleaned and sanitized by Mr. Harkum and kept so by Mr. Harkum.

(Mar. 15, 2021 Grievance Decision at 47–48). Further, the MCCR found that Jacobs had offered Harkum accommodations that would allow him to perform the essential functions of his job. (MCCR Written Finding at 43). While the Court is not bound by the MCCR's determination, the MCCR's decision appears supported by the grievance documents. Again, although the Court must typically take the factual allegations in the Amended Complaint as true, where the extra-pleading materials conflict with those bare allegations, the extra-pleading materials prevail. See Fare Deals, 180 F.Supp.2d at 683; RaceRedi Motorsports, LLC, 640 F.Supp.2d at 664. Here, Harkum's bare allegations are belied by the grievance documents as further confirmed by the MCCR's Written Finding, and therefore he has not stated sufficient facts to establish the fourth element of his prima facie case.

Accordingly, the Court will dismiss Counts II and III.

### c.     Hostile Work Environment

Finally, Harkum raises a claim for hostile work environment under the ADA. (Count IV, Am. Compl ¶ 99). Jacobs argues that Harkum fails to state a claim because he has not plausibly alleged any facts suggesting severe, pervasive, or outwardly discriminatory conduct. (Mot. at 22–23). The Court agrees and will dismiss Count IV.

To state a claim for hostile work environment under the ADA, a plaintiff must allege:

> (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

Wilson v. City of Gaithersburg, 121 F.Supp.3d 478, 483 (D.Md. 2015) (quoting Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001)). In order to plead that the environment is "sufficiently severe or pervasive," a plaintiff must allege "not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile." Id. (quoting Fox, 247 F.3d at 178). In order to determine whether a work environment is objectively hostile, the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Fox, 247 F.3d at 178).

In his Amended Complaint, Harkum alleges that unidentified "employees and managers repeatedly disparaged Mr. Harkum and his disability by referring to him as

'shuffles.'" (Am. Compl. ¶ 104). Harkum does not indicate how frequently these employees called him by that nickname or provide names or dates related to that alleged conduct. Harkum also argues that the disapproval of his accommodation request somehow created a hostile work environment. Harkum's sparse allegations regarding the nickname and the denial of his claims are insufficient to state a claim for hostile work environment because he has not presented facts indicating that the alleged conduct was sufficiently severe or pervasive. See Wilson, 121 F.Supp.3d at 483. Accordingly, the Court will grant Jacobs' Motion as to Count IV.[15]

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendant Jacobs Technology, Inc.'s Motion to Dismiss Amended Complaint (ECF No. 25). A separate Order follows. Entered this 22nd day of February, 2023.

_____/s/_____
George L. Russell, III
United States District Judge

---

[15] As Harkum's hostile work environment claim fails under 12(b)(6), the Court need not address Jacobs' other arguments regarding the claim.